IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| KEENAN BOATWRIGHT | ) | |
| 11530 LOCKWOOD DRIVE APT. A2 | ) | |
| SILVER SPRING, MD 20904 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| D.C. DEPARTMENT OF CORRECTIONS | ) | |
| 2000 14TH STREET, N.W., 7TH FLOOR | ) | |
| WASHINGTON, D.C. 20009 | ) | |
| | ) | |
| CORRECTIONS CORPORATION OF | ) | |
| AMERICA | ) | |
| 10 BURTON HILLS BOULEVARD | ) | |
| NASHVILLE, TN 37215 | ) | |
| | ) | |
| PHOENIX HOUSES OF THE | ) | |
| MID-ATLANTIC, INC. | ) | |
| 521 N. QUINCY STREET | ) | |
| ARLINGTON, VA 22203 | ) | |
| | ) | |
| SHARON MAYS JACKS | ) | |
| COURT SERVICES AND OFFENDER | ) | |
| SUPERVISION AGENCY | ) | |
| 633 INDIANA AVENUE, N.W., SUITE 1387 | ) | |
| WASHINGTON, D.C. 20004, | ) | |
| | ) | |
| SHARI A. LEWIS | ) | |
| COURT SERVICES AND OFFENDER | ) | |
| SUPERVISION AGENCY | ) | |
| 633 INDIANA AVENUE, N.W., SUITE 1387 | ) | |
| WASHINGTON, D.C. 20004, | ) | |
| | ) | |
| and DOES 1-10 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____)

## COMPLAINT

Plaintiff Keenan Boatwright, by his undersigned attorneys, alleges for his complaint as follows:

## PRELIMINARY STATEMENT

1.      This civil-rights lawsuit seeks to vindicate the rights of Plaintiff Keenan Boatwright, a practicing Muslim who was unlawfully discriminated against and terminated from a substance abuse treatment and parole diversion program in retaliation for the exercise of his First Amendment right to freedom of speech and on account of his religion.

2.      The program in which Mr. Boatwright was participating, the Secure Residential Treatment Program ("SRTP"), is an alternative placement program for eligible D.C. Code offenders on parole or supervised release who face possible revocation of parole.  The program provides up to 180 days of substance abuse counseling and other treatment.  SRTP participants waive their right to a speedy parole revocation determination and are confined in the Correctional Treatment Facility ("CTF") in the District of Columbia for the duration of the initial six-month phase of the program.  Upon successful completion of the program, parole revocation proceedings are favorably terminated and participants are restored to the community.

3.      While a participant in SRTP, Mr. Boatwright helped lead and organize a collective grievance by the Muslim prisoners against SRTP staff whose behavior was interfering with group daily prayers during the Muslim holy month of Ramadan.  As a result of the grievances, the offending staff members were reassigned.  Mr. Boatwright then became the target of baseless allegations of disciplinary infractions, all of which were resolved in his favor. Nonetheless, Mr. Boatwright was summarily discharged from SRTP prior to completing the program.

1

4.      The defendants' actions violated Mr. Boatwright's rights under the First and Fifth Amendments to the United States Constitution, 42 U.S.C. § 1983, the Religious Freedom Restoration Act, and the District of Columbia Human Rights Act.  Mr. Boatwright seeks damages for the unlawful violation of his civil rights.

## PARTIES

5.      Plaintiff Keenan Boatwright is a practicing Muslim and resident of the Maryland. At the time of the events described in this complaint, Mr. Boatwright was incarcerated at the Correctional Treatment Facility at 1901 E Street S.E. in Washington, D.C.

6.      Defendant D.C. Department of Corrections ("DOC") is an agency of the District of Columbia, with administrative headquarters at 2000 14th Street, N.W. in Washington, D.C. The DOC operates the Correctional Treatment Facility at 1901 E Street S.E. in Washington, D.C. by and through its contractor the Corrections Corporation of America.

7.      Defendant Corrections Corporation of America ("CCA") is a Maryland corporation with its principal place of business in Nashville, Tennessee.  CCA is the nation's largest owner and operator of privatized correctional and detention facilities in the United States. CCA does business in the District of Columbia by operating the CTF under contract to the D.C. Department of Corrections.

8.      Defendant Phoenix Houses of the Mid-Atlantic, Inc. ("Phoenix Houses") is a private not-for-profit organization based in Arlington, Virginia.  Phoenix Houses does business in the District of Columbia by providing inpatient substance abuse and mental health services to offenders confined in the SRTP Unit of the CTF under contract to the Federal Bureau of Prisons.

9.      Defendant Sharon Mays Jacks is an employee of the Court Services and Offender Supervision Agency ("CSOSA").  On information and belief, she is a resident of Maryland.  At

2

the time of these events, she served as Program Manager for the SRTP in the District of Columbia.   Ms. Mays Jacks is sued in her individual capacity.

10.     Defendant Shari A. Lewis is an employee CSOSA.  At the time of these events, she served as Treatment Specialist for the SRTP in the District of Columbia.  On information and belief, she is a resident of Maryland.  Ms. Lewis is sued in her individual capacity.

11.     Other SRTP staff whose identities are unknown at this time, including but not limited to CSOSA, DOC, CCA, and Phoenix House employees, who were personally involved in the decision to terminate Mr. Boatwright from the SRTP in violation of his rights and contrary to law, are sued in their individual capacity and named here as DOES.

## JURISDICTION AND VENUE

12.     This action arises under the United States Constitution, 42 U.S.C. § 1983, the Religious Freedom Restoration Act, and the D.C. Human Rights Act.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) & (4).

13.     This Court has supplemental jurisdiction over District of Columbia law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over all defendants because they either reside in or do business in the District of Columbia.

15.     Venue is proper in the District of the Columbia under 28 U.S.C. § 1391(b)(2) because at least one defendant resides within this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### The Secure Residential Treatment Program

16.     The Secure Residential Treatment Program ("SRTP" or "the program") was created in 2009 to be an alternative placement for eligible D.C. Code offenders on parole or supervised release who face possible revocation of parole on technical grounds, including substance abuse or other criminal violations.  SRTP provides up to 180 days of substance abuse and criminal conduct intervention for approximately 32 men at a time.  Phase I of SRTP lasts six months, during which participants are confined at the D.C. Department of Corrections' Correctional Treatment Facility ("CTF") in Washington, D.C.; individuals who successfully complete Phase I are then released to participate in an out-patient program called Phase II.

17.     SRTP uses a "cognitive behavioral therapy" treatment model that seeks to encourage "pro-social thinking" that is consistent with the norms of a law-abiding community. SRTP participants attend daily classes and group therapy sessions and complete reading assignments and workbooks that are designed to teach life skills, help participants understand and address the root causes of substance abuse, and remain law-abiding members of the community.  This kind of intensive therapeutic treatment and education provided through SRTP is not available to other incarcerated D.C. inmates or parole violators.

18.     SRTP is a multi-agency partnership that involves the Federal Bureau of Prisons ("BOP"), the Court Services and Offender Supervision Agency ("CSOSA"), the D.C. Department of Corrections ("DOC"), and the United States Parole Commission ("USPC"). Substance abuse and other treatment programming is provided by Phoenix Houses of the Mid-Atlantic, Inc. ("Phoenix Houses") under contract to the BOP.  The facility at which SRTP participants are confined during Phase I, the CTF, is operated and managed by the Corrections Corporation of America ("CCA") under contract to the DOC.

4

19.     The USPC, a component of the U.S. Department of Justice, offers eligible D.C. Code offenders the opportunity to participate in SRTP after probable cause has been found that the offender violated a term of parole or supervised release.  An individual who signs an application to the program waives his right to a parole revocation hearing within 60 days of the probable cause finding.  If the individual successfully completes the program, USPC automatically terminates parole revocations proceedings and restores the individual to the community.  Individuals who are unfavorably discharged from SRTP prior to completion are placed into revocation proceedings.  The USPC administers parole for D.C. Code offenders under the authority of the D.C. Revitalization Act of 1997, Pub. L. 105-33 § 11231, 111 Stat. 712 (1997), an Act of Congress applicable exclusively to the District of Columbia.

20.     CSOSA, an independent federal agency, provides personnel to manage and staff the SRTP.  Each participant's progress in the program is supervised by a CSOSA Community Supervision Officer (CSO) and Treatment Specialist (TS).  A CSOSA employee serves as Program Manager for SRTP.  Discharge plans are developed by an Interdisciplinary Team that includes Phoenix Houses and CSOSA personnel.  A summary of the discharge plan is provided to the SRTP Program Manager and confirmed with the participant's CSO and Supervisory CSO (SCSO), all CSOSA employees.  CSOSA supervises parole for D.C. Code offenders under the authority of the D.C. Revitalization Act of 1997, Pub. L. 105-33 § 11233, 111 Stat. 712 (1997), an Act of Congress applicable exclusively to the District of Columbia.

21.     Phoenix Houses provides substance abuse treatment services to SRTP participants under contract with the BOP.  Phoenix Houses is a private charitable organization based in Virginia that has served more than 30,000 individuals struggling with substance abuse since 1962.  Phoenix Houses serves clients in Maryland, Washington, D.C., Virginia, West

Virginia, Pennsylvania, and North Carolina.  Phoenix Houses focuses on using a 12-step approach to address a range of substance abuse and co-occurring mental health problems. Phoenix Houses personnel work closely with CSOSA employees and other SRTP staff to assess SRTP participants' progress in the program, evaluate corrective actions, and design individualized treatment and discharge plans.

22.     While participating in Phase I of SRTP, participants are confined in the CTF, which is operated and managed by the CCA under contract to the DOC.  The CTF serves the DOC as a medium-security facility for male and female inmates and provides other specialized confinement needs.  CCA employees are responsible for, among other things, ensuring the safety and security of individuals confined in the SRTP Unit, responding to grievances from participants and other prisoners, and adjudicating alleged disciplinary infractions.

23.     Individuals who are discharged unsuccessfully from the SRTP do not receive any hearing or opportunity to object or present evidence regarding their discharge.  Instead, the SRTP Program Manager, together with other SRTP personnel, determine whether an individual will be discharged.  Upon discharge, the participant's Treatment Specialist and the SRTP Program Manager forward a memorandum to the USPC explaining the alleged basis for the discharge and discharge recommendations.  USPC then schedules revocation proceedings.  If parole or supervised release is revoked, the individual is confined for the duration of his sentence.

**Plaintiff Keenan Boatwright**

24.     Plaintiff Keenan Boatwright is a resident of Maryland and a practicing Muslim.

25.     As a practicing Muslim, Mr. Boatwright observes the religious strictures of Islam and the holy Qur'an.  This includes the annual observance of Ramadan, the ninth and holiest month in the Islamic calendar.  During Ramadan, most observant Muslims fast from dawn until sunset and participate in ritual prayer, or salah, five times daily.  Observance of Ramadan is

6

widely regarded as one of the Five Pillars (or fundamental duties) of Islam, which are considered
"fard" or obligatory for adult Muslims.

26.     Mr. Boatwright is a former D.C. Code offender who was on supervised release in
June 2012.  On June 22, 2012, the USPC determined that probable cause existed that he had
violated a term of his supervised release.  Around the time of his probable cause hearing, he was
offered the opportunity to participate in SRTP.  Mr. Boatwright applied to the program, which
required him to sign a waiver of his right to a prompt parole revocation hearing.  The SRTP
application stated that if Mr. Boatwright were to complete the SRTP successfully, "the U.S.
Parole Commission will terminate the revocation proceeding" against him.

27.     Prior to beginning SRTP, Mr. Boatwright was subjected to a pre-screening
assessment to determine his suitability for the program.  During that assessment, SRTP staff
became concerned that Mr. Boatwright did not plan to reside in the District of Columbia upon
his release, because they noted that he had a Maryland address in his files.  SRTP participants are
required to reside in the District of Columbia after their release so that they can participate in
Phase II of the program, which involves a period in transitional  housing and multiple sessions of
outpatient treatment.  An employee of the DOC confirmed to the USPC on July 24, 2012 that
Mr. Boatwright intended to reside in the District of Columbia after his release in order to
complete the program.  Mr. Boatwright was then placed in the SRTP Unit and commenced the
six-month Phase I of the SRTP on or about July 24, 2012.

### Mr. Boatwright Organizes a Collective Grievance Regarding the Muslim Inmates' Treatment During Ramadan in 2012

28.     In 2012, the Muslim holy month of Ramadan commenced on approximately July
19.  During Ramadan, many of the Muslim prisoners at CTF, including Mr. Boatwright,

participated in ritual prayers, or salah, five times daily. They also abstained from eating or

drinking from before sunrise to after sunset.

29.    Salah is observed five times daily, including a pre-dawn prayer (fajr), a midday

prayer (zuhr), an afternoon prayer (asr), a prayer after sunset (maghrib), and a nightfall prayer

(isha). Salah consists of a ritual repetition of prescribed actions and words that are designed to

act as the person's communication with and remembrance of God. Muslims practicing salah

stand before God, thank and praise him, and ask for guidance.

30.    For Muslims, prayer in congregation is considered more spiritually beneficial than

praying by oneself, and congregational prayers are often led by an imam. Islam does not have an

ordained clergy, however; instead, a congregation may select as its imam any scholar or the

individual who is believed to have the best knowledge of the Qur'an. Mr. Boatwright's fellow

inmates elected him to be their imam and lead the daily congregational prayers during Ramadan

in 2012.

31.    In late July 2012, Mr. Boatwright became concerned about what he believed to be

unprofessional, mocking, and disruptive behavior by CCA officers who were assigned to

supervise the pre-dawn prayer.

32.    Mr. Boatwright, as imam, took it upon himself to consult with the officers and

asked them to be more respectful towards the inmates so that they could pray in peace. Mr.

Boatwright believes that it is his responsibility as a Muslim, especially during the holy month of

Ramadan, to act peacefully towards others even when they disrespect the practice of his religion

and interfere with his religious worship. However, the situation did not improve.

33.    Mr. Boatwright, as imam, then helped organize a collective grievance against the

officers responsible. Mr. Boatwright and others complained about the officers' unprofessional

and disrespectful conduct that they said was interrupting their prayers.  Mr. Boatwright and other

inmates asked that the officers responsible be removed from the Ramadan post.

34.     On August 3, 2012, following an investigation, CCA Chief of Security Laretta

Johnson issued a memorandum regarding "Unprofessional conduct of staff during Ramadan"

that was designed to address "the large amount of inmate complaints [of] unprofessional conduct

of staff providing oversight of the Ramadan religious service programs."  Although Ms. Johnson

deemed her investigation into the allegations "inconclusive," she nonetheless stated that CCA

had reassigned the staff members named in the grievances "to ensure the safety[] and security of

this facility and to protect the religious rights of the Inmates involved."

**Mr. Boatwright Is Subjected to Retaliation**

35.     Following the reassignment of the CCA officers, Mr. Boatwright was subjected to

baseless allegations of disciplinary infractions that were subsequently dismissed, in retaliation

for his role in organizing the collective grievance against the officers.

36.     On or about August 13, 2012, Mr. Boatwright became aware that another officer

assigned to supervise the inmates during prayer, Lieutenant Nicole McCain Hines, was carrying

a can of "mace" (a strong chemical agent called Marc 9) in a way that he believed was

unnecessarily causing the Muslim inmates to feel scared and defensive during prayer instead of

focused on their spirituality.  Again, Mr. Boatwright, as imam, took it upon himself to discuss

the situation with staff in an effort to resolve the issue, as CCA instructs inmates to do in the first

instance, so that the Muslim inmates could peacefully conduct their Ramadan prayers.

37.     After Mr. Boatwright's conversation with Ms. Hines, Ms. Hines filed a

disciplinary report against Mr. Boatwright for allegedly "lying."  In her report, Ms. Hines noted

that Mr. Boatwright asked her why she was carrying the chemical agent, and Ms. Hines wrote

that she said she owed him no explanation.  Ms. Hines also wrote that Mr. Boatwright had

reported to a fellow officer that she had placed her Marc 9 near the faces of other inmates, which she said was a "false statement" that "will not be tolerated."

38.     Three days later, on or about August 16, another staff member filed a disciplinary report against Mr. Boatwright.  The alleged incidents occurred when a CTF law librarian, Danielle Zoller, arrived unexpectedly at Mr. Boatwright's cell to deliver legal books he had requested, accompanied by a CTF guard.  Given that it was the middle of summer in D.C., Mr. Boatwright was dressed only in his underwear and recreational shorts.  Upon Ms. Zoller's arrival, Mr. Boatwright quickly pulled on his pants and shirt and tucked his shirt in.  Mr. Boatwright never exposed himself to Ms. Zoller nor touched himself in an inappropriate manner in her presence.  Nonetheless, she accused him of indecent exposure and "disrespect."

39.     Following the alleged disciplinary incident on August 16, Mr. Boatwright was moved from the SRTP Unit to segregated housing.

40.     On August 21, while Mr. Boatwright was still in segregated housing, the alleged disciplinary infractions were adjudicated before a hearing officer.  Mr. Boatwright was found not guilty as to all the allegations.  The hearing officer concluded that there was insufficient evidence to support any of the charges.

41.     After the disciplinary infractions were adjudicated, Mr. Boatwright had a conversation with Ms. Zoller in which she admitted to him that she had accused him of indecent exposure at the request of Ms. Hines.

**Mr. Boatwright Is Summarily Discharged from SRTP**

42.     Despite being cleared of the disciplinary charges, Mr. Boatwright was never returned to the SRTP Unit or allowed to continue in the program.  Instead, Mr. Boatwright was unsuccessfully discharged from SRTP effective August 29, 2012.

10

43.     On information and belief, other similarly situated SRTP inmates who have been cleared of disciplinary infractions were allowed to return to SRTP.

44.     Mr. Boatwright's discharge memorandum, dated August 30, 2012, states that he was removed from the SRTP Unit following "three reported behavioral incidents."  It does not state that the alleged infractions had already been resolved in Mr. Boatwright's favor by the time of his discharge.

45.     The discharge memorandum also states, as a reason for his discharge, that Mr. Boatwright had allegedly verbalized to staff that he planned to return to Maryland, and therefore he would not be eligible for Phase II of the program.  The memorandum does not state that the issue of Mr. Boatwright's planned residency had been raised by staff prior to his acceptance into SRTP, and that DOC staff had confirmed to the SRTP staff that Mr. Boatwright intended to live in the District of Columbia after his release so that he could complete the program.

46.     The discharge memorandum lastly notes that Mr. Boatwright had "at least one occurrence of being late to group" and had made "requests to remain in bed during group." While the fasting and prayer schedule for Ramadan was particularly grueling in 2012, because it required Mr. Boatwright to awaken and eat a meal at approximately 3:30 a.m. and to not eat or drink again until approximately 8:30 p.m., Mr. Boatwright denies that his observance interfered with his full participation and engagement in SRTP programming.

47.     Mr. Boatwright's discharge memorandum was signed by Shari A. Lewis, Treatment Specialist and CSOSA employee, and Sharon Mays Jacks, SRTP Program Manager and CSOSA employee, and was written on CSOSA letterhead.

48.     On information and belief, both Ms. Lewis and Ms. Mays Jacks were personally involved in the decision to terminate Mr. Boatwright from the SRTP in violation of his rights and contrary to the law.

49.     On information and belief, other SRTP staff whose identities are unknown to Mr. Boatwright at this time, including but not limited to CSOSA, DOC, CCA, and/or Phoenix Houses employees, were personally involved in the decision to terminate Mr. Boatwright from the SRTP in violation of his rights and contrary to the law.

50.     Mr. Boatwright was never given the opportunity to contest the alleged reasons for his discharge from SRTP.  Despite multiple requests, he was not provided with copies of the paperwork clearing him of the disciplinary infractions.  He did not even receive a copy of the discharge memorandum until long after he had been removed.

51.     Following Mr. Boatwright's discharge from SRTP, he actively sought reinstatement to the program.  He sent a letters to the USPC shortly after his discharge, asking for reinstatement and complaining about discrimination and reprisals in the SRTP.  He also filed grievances, noting that he had been exonerated of the disciplinary charges and that the CCA handbook states that there shall be no retaliation against inmates for use of the grievance process.  Mr. Boatwright's attorney also sent emails to the CCA warden and others seeking Mr. Boatwright's reinstatement in SRTP.

52.     Despite these appeals, Mr. Boatwright was never returned to SRTP.  Mr. Boatwright was moved to the D.C. Jail in October 2012.  On December 3, 2012, the USPC revoked Mr. Boatwright's supervised release and he was sentenced to a new term of 14 months from the date of his original warrant.

53.     Mr. Boatwright was thereafter incarcerated at the Federal Correctional Institute, Gilmer in Glenville, West Virginia, until he completed his sentence and was released on August 9, 2013.  Mr. Boatwright is not presently confined in any jail, prison, or other correctional facility.

54.     Defendants acted under color of the laws of the District of Columbia and Acts of Congress applicable exclusively to the District of Columbia.

55.     Mr. Boatwright suffered actual injury as a result of the illegal deprivation of his rights, including but not limited to emotional distress from feelings of unjust treatment, humiliation, and personal indignity, and loss of educational and therapy opportunities.

56.     On information and belief, other SRTP participants have been summarily discharged from the SRTP in relation for the exercise of protected rights or on the basis of a protected status, such that defendants DOC, CCA, and Phoenix Houses employees have acted pursuant to a custom or practice that disregards participants' constitutional rights.

57.     Defendants DOC, Phoenix Houses, and CCA knowingly, negligently and/or recklessly failed to adequately train or supervise their employees to prevent the denial of Plaintiff's rights.

## CAUSES OF ACTION

### First Cause of Action: First Amendment / Freedom of Speech

58.     Mr. Boatwright repeats and realleges Paragraphs 1 through 57 above.

59.     Defendants' dismissal of Mr. Boatwright from the SRTP was an adverse action against Mr. Boatwright taken in retaliation for filing grievances against staff, which is conduct protected by the First Amendment.

60.     Defendants' dismissal of Mr. Boatwright from the program deprived him of the education and therapy opportunities that are only available to SRTP inmates and deprived him of

the opportunity to resolve favorably his parole violation upon successful completion of the program.

61.     Such deprivations were of a magnitude likely to deter a person of ordinary firmness from the exercise of a protected right.

62.     The defendants' actions did not reasonably advance a legitimate correctional goal.

63.     The defendants' actions caused Mr. Boatwright actual injury.

64.     All defendants acted under the color of District of Columbia laws or under federal laws applicable exclusively to the District of Columbia.

65.     The defendants' actions violated Mr. Boatwright's right to freedom of speech as secured under the First and Fifth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## Second Cause of Action: First Amendment / Freedom of Religion

66.     Mr. Boatwright repeats and realleges Paragraphs 1 through 57 above.

67.     Defendants' dismissal of Mr. Boatwright from the SRTP was an adverse action against Mr. Boatwright taken in retaliation for the exercise of his religion and placed a substantial burden on his exercise of religion.

68.     Defendants' dismissal of Mr. Boatwright from the program deprived him of the education and therapy opportunities that are only available to SRTP inmates and deprived him of the opportunity to resolve favorably his parole violation upon successful completion of the program.

69.     The defendants' actions did not reasonably advance a legitimate correctional goal.

70.     The defendants' actions caused Mr. Boatwright actual injury.

71.     All defendants acted under the color of District of Columbia laws or under federal laws applicable exclusively to the District of Columbia.

72.     The defendants' actions violated Mr. Boatwright's right to freedom of religion as secured under the First and Fifth Amendments to the United States Constitution and 42 U.S.C. § 1983.

### Third Cause of Action: Religious Freedom Restoration Act

73.     Mr. Boatwright repeats and realleges Paragraphs 1 through 57 above.

74.     Defendants' dismissal of Mr. Boatwright from the SRTP was an adverse action against Mr. Boatwright that placed a substantial burden on his exercise of religion.

75.     Defendants' dismissal of Mr. Boatwright from the program deprived him of the education and therapy opportunities that are only available to SRTP inmates and deprived him of the opportunity to resolve favorably his parole violation upon successful completion of the program.

76.     The defendants' actions did not further a compelling government interest.

77.     The defendants' actions caused Mr. Boatwright actual injury.

78.     All defendants acted under the color of District of Columbia laws or under federal laws applicable exclusively to the District of Columbia.

79.     The defendants' actions violated Mr. Boatwright's rights under the Religious Freedom Restoration Act, 42 U.S.C. § 2000b-1.

### Fourth Cause of Action: D.C. Human Rights Act

80.     Mr. Boatwright repeats and realleges Paragraphs 1 through 57 above.

81.     Defendants' dismissal of Mr. Boatwright from the SRTP was an adverse action against Mr. Boatwright that discriminated against him on the basis of his religion, and for reasons other than individual merit.

82.     Defendants' dismissal of Mr. Boatwright from the program deprived him of the education and therapy opportunities that are only available to SRTP inmates and deprived him of the opportunity to resolve favorably his parole violation upon successful completion of the program.

83.     The defendants' actions caused Mr. Boatwright actual injury.

84.     The Defendants' actions violated Mr. Boatwright's rights under the D. C. Human Rights Act, D.C. Code § 2-1401.01.

## **RELIEF REQUESTED**

Plaintiff, Keenan Boatwright, requests judgment against Defendants as follows:

A.  For appropriate declaratory relief regarding the unconstitutional and unlawful acts and practices of Defendants;

B.  For appropriate compensatory and punitive damages in an amount to be determined at trial;

C.  For an award of attorneys' fees and costs expended pursuant to 42 U.S.C. § 1988;

D.  Any other and further relief the Court deems proper.


Plaintiff requests trial by jury on all issues so triable.


Date: February 19, 2014                    Respectfully submitted,

                                            _/s/ Laura M. Hussain_____
                                            Thomas G. Saunders (D.C. Bar # 503012)
                                            Laura M. Hussain (D.C. Bar # 988151)

WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Ave N.W.
Washington, D.C. 20006
Phone: (202) 663-6000
Fax: (202) 663-6363

Deborah M. Golden (D.C. Bar. # 470578)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
D.C. Prisoners' Rights Project
11 Dupont Circle N.W., Suite 400
Washington, DC 20036
Phone: (202) 319-1000
Fax: (202) 319-1010

*Attorneys for Plaintiff Keenan Boatwright*