UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEENAN BOATWRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 14-260 (RJL) |
| ) | |
| SHARON MAYS JACKS ) | |
| ) | |
| and ) | |
| ) | |
| SHARI A. LEWIS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

March 8, 2017 [Dkt. #25]

**FILED**
MAR - 9 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Keenan Boatwright ("plaintiff" or "Boatwright") filed this suit claiming that when he was a participant in a secure residential treatment program designed to rehabilitate him after contact with the criminal justice system, the employees of the program retaliated against him for practicing his Muslim faith and for raising concerns about their alleged discrimination. The case is before the Court on a Motion to Dismiss, filed by the only two defendants that remain in the case: Sharon Jacks ("Jacks") and Shari Lewis ("Lewis"). Jacks and Lewis were supervising Boatwright's rehabilitation. Boatwright alleges that they were the ultimate decision makers responsible for terminating him from the treatment program. Jacks and Lewis counter that they had independent grounds to terminate him from the program, and that his termination was not the result of any discrimination or retaliation on their part. Because Jacks and Lewis are protected by

qualified immunity in these circumstances, the Court must **DISMISS** the Complaint for failure to state a plausible claim for relief.

## FACTUAL BACKGROUND

Keenan Boatwright is a D.C. Code offender who was enrolled in a secure residential treatment program in July 2012 when parole authorities found probable cause that he had violated a term of his supervised release from prison. Compl. ¶ 26. The secure residential treatment program ("SRTP") was created to be an alternative placement for eligible D.C. Code offenders on parole or supervised release who faced possible revocation. Compl. ¶ 16. In Phase I of the SRTP, the participants are confined to a correctional treatment facility ("CTF"). Compl. ¶ 22. In Phase II, SRTP participants are released to an out-patient program and required to reside in the District of Columbia for a period of time in order to complete the programming. Compl. ¶¶ 16, 27. An independent federal agency called the Court Services and Offender Supervision Agency ("CSOSA") provides personnel to manage each individual's participation in the SRTP. Compl. ¶ 20. Other staff perform other roles for the SRTP: employees of the Corrections Corporation of America ("CCA") were responsible for ensuring the safety and security of the residents in the CTF where Boatwright resided and employees of Phoenix Houses provided substance abuse treatment services to the participants. Compl. ¶¶ 21-22.

Defendant Sharon Mays Jacks is an employee of CSOSA. Compl. ¶ 47. She

was Program Manager for the SRTP in the District of Columbia when Boatwright was enrolled. *Id.* Defendant Shari A. Lewis is also an employee of CSOSA. *Id.* She served as Treatment Specialist for the SRTP. *Id.*

Shortly after Boatwright arrived at the CTF, in late July 2012, he began complaining about harassment and discrimination stemming from his religious observance of his Muslim faith, including during Ramadan. Compl. ¶¶ 27, 31-33. Boatwright was concerned about what he saw as unprofessional, mocking, and disruptive behavior by CCA officers who were supervising the pre-dawn prayer of Boatwright. Compl. ¶ 31. Boatwright and others reported the officers' conduct and asked that these officers be removed from the Ramadan post. Compl. ¶ 33. At the beginning of August, CCA Chief of Security Laretta Johnson issued a memorandum after an investigation of this complaint. Compl. ¶ 34. Johnson's memorandum found the allegations "inconclusive" but nonetheless stated CCA had reassigned the staff members named in the grievances. *Id.*

A little over a week later, Boatwright started noticing what he believed to be retaliation. Another officer assigned to supervise the inmates during prayer, Lieutenant Nicole McCain Hines ("Hines"), was carrying a can of mace in a way that Boatwright thought was causing the Muslim inmates to feel scared instead of focusing on their prayers. Compl. ¶ 36. Boatwright discussed this situation with Hines. *Id.* Following the conversation, Hines filed a disciplinary report against Boatwright for allegedly

3

falsifying that she had placed her can of mace near the faces of other inmates.  Compl. ¶ 37.  Three days later, another staff member filed a disciplinary report against Boatwright, allegedly at the request of Hines.  Compl. ¶¶ 38, 41.  In this incident, a Phoenix Houses law librarian accused Boatwright of indecent exposure and "disrespect" after delivering books to his cell, where he was caught unaware and was in a state of some undress.  *Id.*  On August 21st, these disciplinary infractions were adjudicated and the hearing officer determined there was insufficient evidence to support the charges.  Compl. ¶ 40.

On August 29th, SRTP staff determined that Boatwright was no longer eligible for the SRTP program and unfavorably discharged him.  Compl. ¶ 42.  Participants who are unfavorably discharged from the SRTP have to face their original violations and will end up back in prison if their supervised release is revoked.  Compl. ¶ 19.  The discharge memorandum issued for Boatwright, dated August 30, 2012, states he was removed from the SRTP Unit following "three reported behavioral incidents."  Compl. ¶ 44.  It states as additional reasons for discharge that Boatwright had failed to take part in some SRTP programming and that Boatwright had told staff he planned to return to Maryland, which would make him ineligible for Phase II of the program.  Compl. ¶¶ 45-46.  Lewis and Jacks both signed the discharge memorandum.  Compl. ¶ 47.

Plaintiff Boatwright filed this action against the D.C. Department of Corrections, Corrections Corporation of America, Phoenix Houses of the Mid-Atlantic, Inc., Jacks and

4

Lewis in February 2014, alleging that he was discriminated and retaliated against when he was terminated from the SRTP. Defs.' Mot. to Dismiss 1 [Dkt. # 25-1]. The suit states causes of action under the First and Fifth Amendments to the United States Constitution, 42 U.S.C. § 1983, the Religious Freedom Restoration Act, and the District of Columbia Human Rights Act. Plaintiff has since settled his claims against the D.C. Department of Corrections, CCA, and Phoenix Houses. *See* Stipulations of Dismissal [Dkts. #28, #35, #43]. Boatwright's remaining claims are against Jacks and Lewis. He sues them in their individual capacities, alleging they violated his rights while acting pursuant to their official authority as employees of CSOSA.

## ANALYSIS

### I. The Complaint Does Not Plausibly Allege that Jacks and Lewis Were Personally Involved in the Alleged Discrimination or Retaliation.

Assuming without deciding that Jacks and Lewis, as employees of CSOSA, may be treated as federal officials and sued in a *Bivens* action, Boatwright may only sustain a suit against them if it is plausible from the face of the Complaint that they were personally involved in depriving him of his constitutional right to be free from both religious discrimination and retaliation for protected speech. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (citing *Tarpley v. Greene,* 684 F.2d 1, 9-11 (D.C. Cir. 1982)). In a case like this, where plaintiff alleges that he suffered an injury as a "result of unconstitutional discrimination," it is not enough to rely merely upon a chain of events in which a precursor to his injury

5

was discrimination. *See Iqbal*, 556 U.S. at 682-83. Rather, he must plead facts that make it plausible that the individual defendants "themselves acted on account of a constitutionally protected characteristic." *Id.* The upshot is that the pleading must "plausibly suggest [defendants'] discriminatory state of mind." *Id.* It is not even enough to plead that other actors' discriminatory acts earlier in the chain of events were "condoned by" defendants. *Id.* Moreover, when there is an "obvious alternative explanation" for the official action, *id.* at 682 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)), "purposeful, invidious discrimination . . . is not a plausible conclusion." *Id.*

The bald assertion that Jacks and Lewis were discriminating against Boatwright is not a plausible inference from the mere fact that they signed a discharge letter that cited factors that were legitimate on their face. Boatwright has not pleaded any facts that would tend to support the inference that Jacks and Lewis themselves acted with a discriminatory state of mind. He does not even plausibly suggest that Jacks and Lewis *knew* that Boatwright was Muslim or had engaged in any First Amendment-protected activity. He raises nothing that would put into question Jacks's and Lewis's good faith belief that the "behavioral incidents" that they cited were actually disruptive or problematic, rather than a pretextual excuse to discriminate or retaliate. All Boatwright alleges is that the disciplinary actions were in fact baseless and pretextual when launched against Boatwright by the CTF staff. But even accepting that assertion as true, he does

not allege facts to suggest that Jacks and Lewis would have known so. The closest the Complaint comes to alleging the requisite knowledge or motive is when it states that Jacks was a "program manager" and Lewis a "treatment specialist" who supervised participants as they progressed through the program, Compl. ¶¶ 9, 20, but this general assertion does not give rise to the conclusion that the defendants were exposed to the how and why of the way the staff treated Boatwright.

Moreover, Boatwright does not plead any facts that cast doubt on Jacks's and Lewis's belief that he wanted to go to Maryland and that he did not participate in some SRTP programming. Boatwright does not even deny the latter contention, saying only that his religious practice did not interfere with the programming, not that he always participated. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss 6 n.1 [Dkt. #30] (citing Compl. ¶ 46). Hence, it is not plausible from the face of the Complaint that the reason Jacks and Lewis dismissed Boatwright was to discriminate or retaliate against him, rather than for a good reason or at least for a mistakenly bad reason, relied upon in good faith. As in *Iqbal*, "purposeful, invidious discrimination . . . is not a plausible conclusion." 556 U.S. at 682.

## II. The Complaint Does Not Allege Facts that Pierce the Defendants' Qualified Immunity.

For all other potential claims, plaintiff concedes that defendants are covered by qualified immunity in their positions as government officials. In order to defeat

qualified immunity at the motion to dismiss stage, plaintiff must allege facts that plausibly establish the individual defendants "knew or should have known that the action [they] took within [their] sphere of official responsibility would violate" plaintiff's rights. *Wood v. Strickland*, 420 U.S. 308, 322 (1975) (deciding the standard for qualified immunity in school disciplinary actions); *see also Iqbal*, 556 U.S. at 685 (2009) (applying the qualified immunity standard at the motion to dismiss stage). As discussed above, it is not plausible from the face of the Complaint that Lewis and Jacks knew that Boatwright's "behavioral incidents" occurred because of his faith or his First Amendment-protected activity. And to the extent the plaintiff's theory of the case is more attenuated—e.g., that Jacks or Lewis should have looked into the reasons Boatwright's behavioral incidents were reported or should have suspected the discipline was retaliatory—then qualified immunity applies all the same. Qualified immunity is intended to protect government officials from the burdensome duty of rooting out potentially injurious conduct, which burden might make them unable or unwilling to perform the discretionary functions of their jobs. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). As a result, to defeat qualified immunity, a plaintiff must plead facts that establish the individuals as "plainly incompetent" or "knowingly violat[ing] the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Failing to connect the dots, even if, as plaintiff alleges, such an inference was possible or should be expected, is simply not enough for individual liability in this case. Accordingly, government official defendants

like Jacks and Lewis are immune from suit for allegedly violating plaintiff's rights under the Constitution, the RFRA, and the D.C. Human Rights Act.

## CONCLUSION

For both of the aforementioned reasons, the individual defendants' Motion to Dismiss this case is GRANTED. Because plaintiff has no remaining claims, the case is DISMISSED in its entirety. An order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge